**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MARIE H.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 19 C 364** |
| **v.** | ) | |
| | ) | **Magistrate Judge Gabriel A. Fuentes** |
| **ANDREW M. SAUL, Commissioner of Social Security,** [1] | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**[2]

Plaintiff, Marie H.,[3] applied for Disability Insurance Benefits ("DIB") on November 5, 2015, alleging a disability onset date of December 2, 2014, when she was 39 years old. (R. 183.) After her applications were denied initially and on reconsideration, the ALJ held a hearing on December 21, 2017. (R. 39.) On February 16, 2018, the ALJ issued an opinion denying Plaintiff's application for benefits. (R. 15.) On December 10, 2018, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (R. 1-2), making the ALJ's decision the final decision of

[1] The Court substitutes Andrew M. Saul for his predecessor, Nancy A. Berryhill, as the proper defendant in this action pursuant to Federal Rule of Civil Procedure 25(d) (a public officer's successor is automatically substituted as a party).

[2] On February 19, 2019, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to a United States Magistrate Judge for all proceedings, including entry of final judgment. (D.E. 14.) On May 31, 2019, this case was reassigned to this Court for all proceedings. (D.E. 21.)

[3] The Court in this opinion is referring to Plaintiff by her first name and first initial of her last name in compliance with Internal Operating Procedure No. 22 of this Court. IOP 22 presumably is intended to protect the privacy of plaintiffs who bring matters in this Court seeking judicial review under the Social Security Act. The Court notes that suppressing the names of litigants is an extraordinary step ordinarily reserved for protecting the identities of children, sexual assault victims, and other particularly vulnerable parties. *Doe v. Vill. of Deerfield*, 819 F.3d 372, 377 (7th Cir. 2016). Allowing a litigant to proceed anonymously "runs contrary to the rights of the public to have open judicial proceedings and to know who is using court facilities and procedures funded by public taxes." *Id*. A party wishing to proceed anonymously "must demonstrate 'exceptional circumstances' that outweigh both the public policy in favor of identified parties and the prejudice to the opposing party that would result from anonymity." *Id*., citing *Doe v. Blue Cross & Blue Shield United of Wis*., 112 F.3d 869, 872 (7th Cir. 1997). Under IOP 22, both parties are absolved of making such a showing, and it is not clear whether any party could make that showing in this matter. In any event, the Court is abiding by IOP 22 subject to the Court's concerns as stated.

the Commissioner. *Prater v. Saul*, 947 F.3d 479, 481 (7th Cir. 2020). Plaintiff has now moved to remand the ALJ's decision (D.E. 22), and the Commissioner has moved to affirm. (D.E. 30.)[4]

## I. Administrative Record

Plaintiff is considered obese at 5'7" tall and between 206 and 224 pounds. (R. 25, 615, 662.) In January 2014, she was taking naproxen, hydrocodone (narcotic) and Flexeril (muscle relaxant) and receiving physical therapy ("PT") for neck and back pain. (R. 304, 309.) In July, Plaintiff reported to her primary care doctor, Mukhtar Nandra, M.D., that she was losing sleep due to the pain (R. 354), and from August through November, she was treated by a chiropractor for pain on the top left side of her head and moderately severe left side neck pain. (R. 328-29.) In November 2014, Plaintiff also developed floaters in her eye and dizziness, but a brain MRI was negative. (R. 229-30, 335-39, 344, 573.) Plaintiff returned to PT for neck pain and decreased cervical (neck/upper back) range of motion ("ROM") in November. (R. 557.) Plaintiff reportedly stopped working (as a warehouse machine operator) on December 2, 2014 due to neck and back pain. (R. 207, 215.)

In February 2015, after 12 sessions of PT, plaintiff reported that her neck pain and headaches were 50 percent better. (R. 402-03.) An MRI of her cervical spine showed disc bulging and moderate foraminal stenosis (spinal canal narrowing) at multiple levels. (R. 406.) In March, Plaintiff began visiting Valley West Hospital pain management clinic ("Valley West"). On examination, Advanced Practice Nurse ("APN") Jeannine Fair found Plaintiff had cervical muscle spasm, painful ROM and tenderness over her upper spine and neck muscles. (R. 443.) Plaintiff reported taking ibuprofen with no relief; APN Fair prescribed Flexeril. (R. 442-43.) On March 30,

---

[4] The ALJ found Plaintiff did not have severe mental impairments (R. 23), and Plaintiff does not raise the issue of her mental impairments in her briefing. Consequently, the Court does not discuss them in this opinion.

2015, Plaintiff received trigger-point injections and an occipital nerve block to address her upper back and neck pain. (R. 477.)

On April 3, 2015, Plaintiff visited neurologist Ashley Holdridge, D.O., complaining of daily headaches and throbbing facial pain. (R. 455.) Plaintiff reported that Flexeril helped slightly but made her very tired. (R. 456.) Dr. Holdridge's examination showed neck tenderness, and Dr. Holdridge felt Plaintiff had cervicogenic headaches (pain that develops in the neck) given her spinal tenderness. (R. 457.) On April 15, Plaintiff returned to PT; the therapist noted Plaintiff had moderate tightness and tenderness and reduced ROM in her cervical spine. (R. 561-62.)

On April 16, 2015, Plaintiff told APN Fair that she had no relief from the injections and nerve block; her pain was constant and made it hard to sleep. (R. 432, 435.) In addition to neck and head pain, Plaintiff presented with lumbar (lower back) pain, which APN Fair attributed to radiculopathy (nerve pain) and myofascial (muscle) pain. (R. 436.) She prescribed gabapentin (nerve pain medication) and Flexeril. (R. 434.) In May, Plaintiff reported that her pain improved with gabapentin, and she denied side effects from it. (R. 428-30.) APN Fair increased her dose of gabapentin and discontinued Flexeril. (R. 431.) In June, however, Plaintiff told Dr. Holdridge that she had daily headaches that throbbed and ached for 30 minutes at a time. (R. 453.) Dr. Holdridge prescribed Imitrex (for migraines). (R. 454.) In July, Plaintiff reported that her neck pain was radiating to her head, and she had right arm tingling and numbness. (R. 461.)

On September 15, 2015, Plaintiff visited neurologist Henry Echiverri, M.D., at Edward-Elmhurst Health pain management clinic ("Edward") for her headache and neck pain. (R. 581.) Dr. Echiverri diagnosed cervical myofascial pain syndrome, acute cervical strain and chronic post-traumatic headache. (R. 582.) He prescribed Tizanidine (muscle relaxer) and Midrin for headache pain relief. (*Id.*) In October, Plaintiff followed up at Valley West for her low back and cervical

spine pain. (R. 504.) APN Carmen Janich listed Plaintiff's pain medications as Tylenol with codeine and gabapentin. (R. 506.) Examination showed limited neck ROM and cervical nerve pain. (R. 508.) On October 14, 2015, an MRI of Plaintiff's lumbar spine showed multilevel disc bulge with facet hypertrophy (joint swelling), causing moderate to severe neuroforaminal stenosis at L4-5 and moderate neuroforaminal stenosis at L3-4 and L5-S1. (R. 539-40.)

On November 4, 2015, Plaintiff visited pain management specialist Mohammad Khan, M.D., at Edward. Plaintiff reported sharp and aching pain in her low back, which radiated down her leg, and stabbing and aching pain in her neck and associated tingling and numbness over her left shoulder and arm. (R. 584.) Examination showed moderate tenderness over her lower back and hip joint. Dr. Khan assessed Plaintiff with cervical and lumbar radiculitis, cervical and lumbar facet arthropathy (degeneration of the facet joints), sacroiliitis (inflammation of joints between the lower spine and pelvis) and cervical stenosis. (R. 584-85.) He recommended Plaintiff continue home exercises and undergo lumbar and cervical epidural steroid injections and facet joint injections as needed. (R. 585.) On November 13, Plaintiff complained to APN Janich of cervical and lumbar pain and a burning pain in her left ankle. (R. 510-14.) APN Janich prescribed indomethacin, for arthritis pain. (R. 513.) On November 17, November 24, and December 1, Plaintiff received three lumbar epidural steroid injections from Dr. Khan. (R. 586, 589, 592, 599.)

On December 7, 2015, Plaintiff and her husband filled out function reports that described Plaintiff having trouble sleeping, dressing and bathing due to pain. (R. 237-38, 246.) Her husband helped take care of the children and prepare meals because standing, lifting, bending and hand movements caused Plaintiff pain. (R. 239-42, 245-47, 250-52.) Plaintiff also did not drive because turning her head caused her pain, nausea and dizziness. (R. 248.)

On December 10, 2015, Plaintiff followed up with Dr. Echiverri. He listed Plaintiff's prescriptions as indomethacin (which caused her nausea and stomachache), gabapentin, alprazolam (Xanax, as needed for sleep) and Tizanidine. (R. 607.) Plaintiff reported having one disabling headache per week, which she controlled with home exercises she learned in PT. (*Id.*) On examination, Plaintiff had full neck ROM but pain on bending and extension. (*Id.*) Dr. Echiverri discontinued Tizanidine, started Plaintiff on nortriptyline (for nerve pain), and referred her for additional PT and injections. (R. 607-08.) On December 16, plaintiff returned to Edward for follow up; on examination, she had pain and tenderness in her lumbar and cervical spine. (R. 611.) The nurse recommended facet and sacroiliac joint injections. (R. 612.) On December 30, Dr. Khan performed a left cervical facet injection. (R. 673.)

In January 2016, Plaintiff continued to report low back pain, neck pain and headache. (R. 666.) APN Janich's examination confirmed low back and cervical spine tenderness, although Plaintiff had full ROM and stable gait; she refilled Plaintiff's prescription for Tylenol with codeine. (R. 667.) Plaintiff's physical therapist also noted Plaintiff had normal ROM but increased pain moving from flexion to extension. (R. 690.) At the end of February, Plaintiff reported that her cervical pain felt 30 percent better and her headaches decreased in frequency with PT. (R. 696.)

In January 2016 Plaintiff also underwent state agency consultative examinations. Plaintiff reported that she had constant neck pain that radiated to her left arm and the left side of her head, ranging in severity from a three to eight out of 10. (R. 621.) She also reported having back pain that radiated down her left leg and worsened with standing, walking and sitting. (*Id.*) Plaintiff estimated she could stand for 10 to 15 minutes at a time, sit for one hour at a time, and lift five pounds (*id.*); she reported that with help, she could cook, wash dishes, shop and take care of her children, but she did not drive and her sleep was restless because she was in pain much of the time.

(R. 617.) On examination, she had tenderness and limited ROM in her cervical spine, tenderness in the lumbosacral region of her back, mild paraspinal spasm and moderate restriction in her ability to squat and rise. (R. 622.) The exam was otherwise normal. (R. 622, 626.) The non-examining State agency reviewing doctors opined Plaintiff had severe degenerative disc and joint disease, but that she could perform medium work with postural limitations. (R. 66-72.)

On February 16, 2016, Plaintiff returned to Edward for pain management because she continued to have headaches, worse with bending, exertion and exposure to light and sound. (R. 633.) The physician assistant prescribed propranolol and Fioricet for headaches, and recommended Plaintiff continue gabapentin for cervical myofascial pain syndrome because she reported that her neck pain had improved with PT, injections and gabapentin. (R. 633-34.) In March, at another check-up at Edward, Plaintiff reported that she experienced 20 percent relief in her neck pain after the December 2015 cervical facet joint injections and up to 40 percent improvement with PT. (R. 637.) However, her neck pain was again worsening and radiating up through her head, and she felt weakness in her left arm. (*Id.*) She also felt a burning pain in her lower back that radiated down her left leg and foot, worse when standing. (*Id.*) Plaintiff said that home exercises, gabapentin, and using a TENS unit[5] helped her pain. (*Id.*)

Later in March 2016, APN Janich observed that Plaintiff had full ROM, stable gait, normal grasp and full muscle strength, but she had low back and cervical spine tenderness as well as positive straight leg raising and Spurling tests, which indicated lower back and cervical radiculopathy, respectively. (R. 663.) Two follow-up examinations with APN Janich in June 2016 yielded the same results, culminating in a diagnosis of rheumatoid arthritis. (R. 659-62.)

---

[5] A transcutaneous electrical nerve stimulation (TENS) unit is a battery-operated device that treats pain by delivering small electrical impulses through electrodes attached to a person's skin.

On June 30, 2016, APN Janich filled out a chronic pain residual functional capacity ("RFC") questionnaire. Janich indicated Plaintiff had reduced ROM of her cervical spine, reflex changes, impaired sleep, weight change, tenderness, swelling and positive straight leg raise, indicative of pain in her cervical spine, lumbar spine, headache, knees, shoulders, wrist and hands. (R. 641.) She opined Plaintiff could sit for 45 minutes and stand for 15 minutes at one time, could sit/stand/walk less than two hours total in an eight-hour day, and would need to take unscheduled breaks every hour to lie down or walk around for 15 to 20 minutes. (R. 642-43.) Janich further indicated Plaintiff could frequently lift less than 10 pounds, use her hands only 15 percent of the time for grasping, turning and twisting objects, and never reach. (R. 644.)

In September 2016 and February 2017, APN Janich again recorded Plaintiff as having full ROM and muscle strength, normal grasp, stable gait, back tenderness, and positive straight left leg raising and Spurling tests. (R. 653-54, 656-58.) From April through June 2017, Plaintiff received PT for cervical pain that radiated down her left arm, decreased cervical range of motion, lower back pain that radiated down her left leg and continued headaches. (R. 701-03, 708-12.)

## II. Evidentiary Hearing

At her December 21, 2017 hearing before the ALJ, Plaintiff testified that she had daily headaches lasting one to two hours, during which she took medication and laid down. (R. 46-47.) She also had neck pain which radiated down her arms; she had trouble lifting things and washing her hair with her left hand. (R. 47-50.) Plaintiff stated that she also had back pain that radiated down her left leg, which made it hard for her to bend over, stand for more than 30 minutes at a time, or sit for more than one hour at a time. (R. 50-51.) She testified that she takes gabapentin daily to help with the pain, but it causes her nausea and dizziness. (R. 52.)

The ALJ provided the vocational expert ("VE") with several hypotheticals, including of a person who could perform light work with postural limitations, including no stooping or kneeling, and a limitation to occasional bilateral overhead reaching. (R. 53-54.) The VE testified that the individual could not perform Plaintiff's past work, but that a significant number of other jobs existed for that individual (*Id.*)

**III. ALJ's Decision**

On February 16, 2018, the ALJ issued an opinion finding Plaintiff was not disabled within the meaning of the Social Security Act from her alleged onset date of December 2, 2014 through the date of the decision. (R. 21.) The ALJ determined Plaintiff had the severe impairments of chronic headaches, cervical radiculitis, facet arthropathy, cervical myofascial pain syndrome, lumbar radiculitis and obesity (R. 23), but that her impairments, alone or in combination, did not meet or medically equal the severity of a listed impairment. (R. 25.) The ALJ assigned Plaintiff an RFC to perform light work, limited to occasional postural activities and occasional bilateral overhead reaching. (R. 26.)

The ALJ reviewed Plaintiff's medical reports, noting that they frequently showed a stable gait, full ROM of her back and neck and full muscle strength, despite multiple examinations showing Plaintiff had pain with ROM and tenderness to palpation. (R. 27-28.) The ALJ recognized Plaintiff received injections and took medication for her pain, but the ALJ observed that Plaintiff said her headaches and neck pain improved with PT. (R. 28-29.)

The ALJ noted that the January 2016 state agency examinations showed stable gait and full strength as well as limited cervical spine ROM, lumbar spine tenderness and moderate restriction in Plaintiff's ability to rise and squat. (R. 29.) The ALJ called these clinical findings "essentially normal," and noted that Plaintiff told the consultative examiner that "she can do the following

chores around the house: cooking (with help), washing dishes (with help), and taking care of children (with help)." (*Id.*) The ALJ also noted that in March 2015, Plaintiff reported that she "walk[ed] gently at home about an hour each day" without problem. (*Id.*)

The ALJ gave "little weight" to APN Janich's RFC statement, finding it inconsistent with APN Janich's own treatment notes from 2016 and 2017, which documented full range of motion, stable gait, normal grasp and full muscle strength, along with back pain and tenderness. (R. 30.) The ALJ also stated that Janich gave "no medical reason" for limiting Plaintiff's ability to stand, sit and walk less than 2 hours a day where Plaintiff "was walking 1 hour every day at home" without difficulty. (*Id.*) In addition, the ALJ found Janich's opinion inconsistent with the consultative examinations and other medical evidence, which did not document any deficiencies in Plaintiff's grip strength or grasping ability. (R. 28, 30.)

The ALJ gave "some weight" to the non-reviewing state agency determination that Plaintiff could perform medium level work but found that Plaintiff experienced physical limitations from her impairments that would limit her to light work, and that jobs existed in significant numbers in the national economy that Plaintiff could perform. (R. 30-31.)

**IV. Analysis**

The Court's review of the ALJ's decision "is deferential; we will not reweigh the evidence or substitute our judgment for that of the ALJ." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017). The ALJ's decision will be upheld "if it is supported by substantial evidence—evidence a reasonable mind might accept as adequate to support a conclusion." *Lothridge v. Saul*, 984 F.3d 1227 (7th Cir. 2021). "An ALJ need not address every piece of evidence," but must "build an accurate and logical bridge" between the evidence and her conclusion. *Lanigan v. Berryhill*, 865

F.3d 558, 563 (7th Cir. 2017). The Court has considered Plaintiff's arguments and finds that the following errors in the ALJ's opinion require remand.

First, the ALJ improperly minimized the extensive and repeated treatment that Plaintiff received to address her pain. While the ALJ acknowledged that Plaintiff received steroid injections, took medication, and underwent PT, the ALJ focused on Plaintiff's claim that she experienced improvement with PT to minimize her consistent reports of severe neck, head and lower back pain. In so doing, the ALJ failed to grasp that Plaintiff's severe pain never resolved. She repeatedly returned to her multiple doctors, including a neurologist and a pain management specialist, to seek new medications and treatment to try to control her pain, including narcotics, nerve pain medication, muscle relaxants, steroid injections, migraine medication and sleep aids.

Plaintiff's repeated willingness to undergo injections, her numerous attempts to address her pain through different doctors and specialists and multiple medication adjustments "belie the conclusion" that Plaintiff's pain had resolved. *Gerstner v. Berryhill*, 879 F.3d 257, 262 (7th Cir. 2018). "There can be a great distance between a patient who responds to treatment and one who is able to enter the workforce." *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). Here, the ALJ erroneously "emphasized that [Plaintiff] had 'good responses' to surgeries, physical therapy, and medication when the medical records actually show that these treatments were ineffective at either consistently or decisively improving [her] pain or resolving [her] functional limitations." *Lambert v. Berryhill*, 896 F.3d 768, 777 (7th Cir. 2018). *See also Scrogham v. Colvin*, 765 F.3d 685, 701 (7th Cir. 2014) ("a claimant's election to undergo serious treatment, such as . . . 'taking heavy doses of strong drugs,' indicates that the claimant's complaints of pain are likely credible," and "the fact that physicians willingly prescribed drugs and offered other invasive treatment indicated that they believed the claimant's symptoms were real.")

Second, the ALJ minimized the importance of abnormal findings in Plaintiff's treatment notes, such as consistent lower and upper back tenderness and pain with ROM, as well as MRI results showing moderate to severe lumbar abnormalities. Instead, the ALJ emphasized Plaintiff's consistently normal gait, full strength, and usually full ROM. It is well-settled that "[a]n ALJ cannot simply cherry-pick facts supporting a finding of non-disability while ignoring evidence that points to a disability finding." *Reinaas v. Saul*, 953 F.3d 461, 466 (7th Cir. 2020). However, that is what the ALJ did here, by "fixat[ing] on select portions" of the medical record that supported the ALJ's finding of non-disability. *Gerstner*, 879 F.3d at 261-62.

Third, the ALJ appeared to put too much weight on Plaintiff's stated activities of walking gently at home for one hour each day and doing household activities such as cooking or cleaning "with help." It is well-settled that "an ALJ cannot disregard a claimant's limitations in performing household activities." *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009). While the ALJ mentioned the limitations on Plaintiff's activities, including needing help and walking "gently," the ALJ did not adequately explain whether she considered Plaintiff's limitations in carrying out these activities of daily living in fashioning Plaintiff's RFC.

## CONCLUSION

For the foregoing reasons, the Court grants Plaintiff's motion for remand (D.E. 22) and denies the Commissioner's motion to affirm. (D.E. 30.)

**ENTER:**

**GABRIEL A. FUENTES**
**United States Magistrate Judge**

**DATED: April 27, 2021**